Good morning. I'm James Laughlin. I represent the appellant Raul Guzman-Ibarez. And with the court's permission, I'd like to reserve two minutes of my time for rebuttal. The issue in this case is whether Mr. Guzman-Ibarez's illegal reentry conviction must be reversed. And that hinges on whether his deportation in 1999 was validly conducted based on his firearm and robbery convictions. At this point, there's no dispute that he was not deportable based on his firearm conviction. So the only remaining question is whether his robbery conviction rendered him both deportable and ineligible for relief from deportation. There's a circuit conflict in the key fact on the first issue, which is whether his robbery conviction was properly treated as an aggravated felony. And for the reasons expressed in the brief, I believe this court's law appears to be on the wrong side of that conflict. And as I reflect on the reply brief, I think at this point probably only en banc review will deal with that issue. But this court can and should grant relief on the second issue, which concerns the immigration judge's failure to advise Mr. Guzman-Ibarez that he was entitled to relief from deportation under sections 212C and 212H, even if his robbery conviction was treated as an aggravated felony. With regard to the 212C relief, there's a wrinkle because Mr. Guzman-Ibarez's deportation proceedings straddled an important change in the law. Those proceedings ran from December 1995 through August of 1999. In 1996, while these proceedings were pending, Congress enacted the AEDPA, which precluded 212C relief for all aggravated felons. A short time after Mr. Guzman was deported in Magana-Pazano, this court held that that change did not apply to proceedings that were ongoing at the time of the AEDPA's enactment. Contrary to what the government contends, this court's subsequent decision in Alvarenga-Villalobos does not apply here. That case dealt purely with a habeas case brought to directly attack immigration proceedings. And that case actually recognized that different standards apply when you're talking about challenging a deportation in a criminal case. But more importantly, just a couple of years ago in Vindel Mendoza, this court recognized expressly that in criminal cases involving 1320-16 motions, Magana-Pazano controls over Henry Soriano, the Bureau of Immigration's appeal case that the government relies on. So for these reasons, Mr. Guzman was eligible for 212C relief. He was also eligible for 212H relief. Such relief is not available to an alien who is admitted as a legal permanent resident. But in Negrete-Ramirez, this court held that the plain language of 212H does not apply to citizens like Mr. Guzman, whose status was adjusted to legal permanent resident after he had already entered the country. And there's no dispute about that. There's no dispute that under current law, Mr. Guzman would be eligible for 212H relief. There's also no dispute that this current interpretation must control unless in 1999, at the time he was deported, there was controlling contrary case law directly on point. And so the dispute between the government and myself really hinges on whether the Bureau of Immigration's case called Henry Rosas-Ramirez was controlling law on this issue. And it simply wasn't. That case dealt with a completely different provision, not Section 212H. What's more, the provision that it did construe is significantly different from 212H. In fact, even the government acknowledges in its brief that the BIA did not issue a controlling decision regarding 212H until 2010, several years after Mr. Guzman was deported. So because there was no controlling case law on point at the time of the 1999 deportation, what was controlling was the plain language of the statute. And that's what the immigration judge had to follow. And this court has already held in Magana-Posano that the plain language of the statute allows aliens who are in the position of Mr. Guzman to apply and to be eligible for 212H relief. So contrary to what the immigration judge told him, he was eligible for both forms of relief. The government doesn't dispute that if that's true, if the immigration judge did misadvise Mr. Guzman, then... Not misadvise, fail to advise. Fail to advise, yes. That if that's true, the government concedes that if that's true, Mr. Guzman can prevail on the 1326D motion even though he didn't seek administrative appeal or otherwise seek judicial review of the deportation order. However, because the district court in ruling on the 1326D motion never addressed the issue of prejudice, whether or not he had plausible grounds for relief even though he was eligible for relief, this court has set a precedent in Leon-Paz that in that situation, it reverses the remands for the district court to address that issue in the first instance. And that's what I think this court should do here. So unless the court has any questions, I'll reserve the remainder of my time. Let me ask you this. Sure. If we reverse the remand of the district court to determine whether there was prejudice, how does the district court determine whether there was prejudice? Well, at this stage, there's already been – what it does is it looks at the state of affairs at the time of the deportation in August 1999. And there's already been declarations submitted on this issue. Presumably, if the court had not decided it didn't need to reach this issue, it could have then gone on to the next stage and actually put some of the declarants up on the stand, let the government cross-examine them, judge their credibility, ask follow-up questions, all the sorts of things that district courts do well in developing the facts for issues like this. And then in the end, what the court would do would say, based on comparisons with this court's case law, with BIA case law, did he have plausible grounds for actually getting this relief. He doesn't have to show that he definitely would have gotten it, but he has to show that he would have had plausible grounds. Isn't that a discretionary determination by the immigration authorities? It is, but that discretion is guided by certain aggravating and mitigating factors. And in the 1326D context, what the courts have done is looked at those factors for the particular alien at issue as they existed at the time of the relevant deportation hearing and then drawn comparisons with reported cases or taken other evidence from other sources. For example, perhaps an expert in immigration proceedings who could provide some guidance as to whether those facts made the alien have plausible grounds for actually getting the relief. And you don't have to show that the immigration judge would have abused his discretion had he not granted discretion. All you have to do is show he has plausible grounds for exercise of discretion. Yes, correct. All right, thank you very much. Thank you. May it please the Court, Cassie Palmer for the United States. I'd like to begin with something that the defendant glossed over. Petitioner. The petitioner glossed over. First of all, defendant failed to raise his aggravated felony arguments in the court below, and therefore this court should deem them waived under Rule 12e. Defendant argues that Rule 12e doesn't apply. However, this court has consistently applied Rule 12e to 1326d motions. Most recently in Aguilera-Rios, this court applied Rule 12e and found good cause existed there because there was an intervening change in the law. Here there wasn't an intervening change in the law with respect to the grounds that defendant is raising. While arguably there might be as to his firearms count, there simply isn't any intervening change in the law with respect to the first-degree robbery count. But even if this court were to consider his arguments that are raised for the first time on appeal, it's clear that defendant was deportable based on his first-degree robbery charge. And that's because he, whereas there is a circuit split, this circuit has clearly come down under Valderrama-Fonseca on the side of the majority view, which is that actions taken encompasses actions by both an immigration judge and the BIA. That remains binding precedent, and this court has consistently applied that rule both in Park and Ortiz. And Ledesma-Galicia, which the defendant cites too in his brief, does not call that into question for three reasons. First of all- I thought he conceded that we may be on the wrong side of a circuit split. He did today, but the brief did not appear to concede that point. Well, but he said it today. Okay, Your Honor. I can move on to the discretionary relief. So this court has held that an IJ's duty to inform an alien of the reasonable possibility that the alien is eligible for relief is based on the law at the time of the hearing. And this court has never required that an immigration judge be clairvoyant in understanding how the law might be interpreted. The changes in the law that the defendant would ask this court to apply, in the case of 12C, this court has held that that was a change in the law. In Alvarenga v. Lobos, this court held that Magana announced a new rule. And in Vidal-Mendoza, and I think this case illustrates well the rebuttal to the defendant's argument, which is- and I'll read right from it- There, the defendant was arguing that even if the case law at the time of the removal hearing foreclosed an alien's eligibility for relief, judicial decisions later explained what the statute always was. And in response to that, this court said, such an interpretation would require the IJ to inform an alien of relief to which the alien was apparently ineligible at the time of the hearing, and it would also require an IJ to give an alien the opportunity to make an application for relief that was not available at the time of the hearing. And this court said that type of interpretation is illogical and inconsistent with the unambiguous language that governs what an immigration judge is required to do with respect to discretionary relief. So Magana doesn't apply. This court has held that it shouldn't apply to collateral attacks, which this is. And in any case, Magana-Pazano is distinguishable. There, the defendant pleaded guilty before AEDPA and before the immigration proceedings commenced. Here, because of the defendant's own intervening criminal conduct, that is why these proceedings were elongated. And he pleaded guilty after AEDPA. If you look into the reasoning in Magana, the court was very concerned about reliance, reliance when a defendant is pleading guilty. And so here, that type of reliance doesn't even come into play because the defendant would not have been relying on law because that law had already changed. So he wouldn't have been, in these proceedings, he wouldn't have been relying on law as it existed at the time because the law had already changed. And in any case, the defendant also is not eligible for relief under 212H. It's even clearer there because Rosas-Ramirez was the law in 1999 and remained so until 2010. That's more than 11 years. And here, the defendant simply cannot establish prejudice in any case. It's not simply that the IJ may have understood the statute incorrectly. It has to be that defendant shows that there's plausible grounds that the Attorney General would have exercised discretion in his favor. As the defendant noted, the court considers aggravating equities. Here, the aggravating equities are clear that defendant committed a crime while his deportation proceedings were in progress. Therefore, he wouldn't be eligible for any relief under 212C. There were no unusual or outstanding equities. And under 212H, he couldn't establish plausible grounds that the admission would result to extreme hardship to his United States citizen spouse. That's something we should decide ourselves or remand to the district court. Your Honor, the government would submit that the court can decide that here. In Garcia-Martinez, this court held that where deportation is a foregone conclusion, prejudice cannot be established. Here, it's clear that if defendant were to go through deportation proceedings today, he would be not eligible for any of the relief that he may have been seeking. This is just kind of a strange situation where the deportation proceedings were elongated, and that was based upon defendant's own criminal conduct. So the government would hold that the record is clear and that the court could determine the prejudice inquiry here. Also, the government has never conceded that the defendant did exhaust his administrative remedies. In fact, below, it's argued that he did not exhaust his administrative remedies. And here, defendant waived his right to appeal, which bars collateral attack. In Vidal-Mendoza, this court held that the interpretation that the defendant would seek this panel to adopt, which is that you can look at all of the intervening changes in the law and apply them, would transform a 1326d motion into a direct appeal. And that's clearly not something that is the proper way to attack the underlying proceeding. Instead, the court there in Vidal-Mendoza said the proper motion, the proper remedy would be to reopen the case. And here, of course, defendant waived his right to appeal. Your position is that it's a foregone conclusion that he'll be removed, not deported, so not to remand it to district court to determine whether it's prejudice. Why do you say it's a foregone conclusion? Because defendant is an aggravated felon based on his first-degree robbery conviction, and as a removable alien and an aggravated felon, he's neither eligible for nor plausibly would be granted relief from deportation. It can't just be some possibility. Here, given defendant's intervening criminal conduct, he would not be eligible for relief. Further, the bars that exist after that under 212C and 212H would apply to the defendant. So he would have no grounds for relief from deportation. Further, given that he waived his right to appeal and did not exhaust his administrative remedies, those would be barred as well. So there are really no facts here that he was denied meaningful review or that he suffered any prejudice as a result. And I would note that in the district court, the defendant had an opportunity for many different rounds of briefing and failed to raise the aggravated felony arguments. And again, as to the discretionary relief, I would again note that this court has held that it's a very, very exceptional case where this court would require an IJ, an immigration judge, to apply law that only existed afterwards. And this is not such a case. Therefore, for these reasons, I would ask the court to affirm the district court's denial of defendant's 1326C motion. Mr. Laughlin, how about addressing the opposing counsel's position that there being an aggravated felony for robbery, there's no possibility of any relief? That's simply wrong, Your Honor. In the 1326D context, what we look at is what was happening at the time of the deportation hearing. The government has cited no case, and I'm aware of no case where this court determines prejudice, or any court determines prejudice, by starting to imagine other deportation proceedings that haven't happened yet or might have happened if they had done something differently. Whether or not Mr. Guzman-Ibarras could be deported now if fresh proceedings were started is completely irrelevant to whether he had a valid deportation order in 1999. And the only question there is whether, given the circumstances in 1999, he was deportable and he had plausible grounds for relief from deportation. His plausible grounds for relief from deportation were extreme hardship for the family? For the 212H relief, yes. I don't think that this court should get into determining whether there's prejudice. The government has cited no case, and I'm not aware of one, where this court has in the first instance addressed prejudice. Its precedent appears to be the contrary, starting with Leon Paz, followed in Pilar Escalon, and the unpublished case I cited in the reply brief, and I would urge the court to follow that. I wanted to make one note about the government's reliance on Vidal-Mendoza. The counsel spent a lot of time quoting for the general propositions about judges not being clairvoyant. We applied the law in effect at the time of the immigration proceedings. But counsel ignores footnote 6, which is directly on point, where the court said, because the federal courts and not BIA have the authority to determine a question of statutory retroactivity, the IJ's duty to inform an alien of reasonable possibility of continued availability of 212C relief was not limited by the BIA's conclusion on this issue in Enri Serrano. I cited that in the opening brief. The government didn't respond to it in its brief. I cited it in the reply brief. The government didn't respond to it in its argument. There is no response to that. That controls on the issue of 212C relief. Thank you very much. Thank you. The case of U.S. v. Guzman Ibarez is marked submitted. And thank you for your argument.
judges: Fernandez, Fisher, Bea